## GEORGIA SOUTHERN AND FLORIDA RAILWAY COMPANY *v.* WISENBACKER.

The evidence warranted a finding that the defendant railway company was guilty of negligence in killing the plaintiff's stock, and the written request to charge presented by the company was properly refused, the same not being adjusted to the issue the jury were called on to determine.

Argued June 23,—Decided July 13, 1904.

Action for damages. Before Judge Griffin. City court of Valdosta. November 27, 1903.

*John I. Hall, Cranford & Walker,* and *R. C. Jordan,* for plaintiff in error. *W. E. Thomas,* contra.

EVANS, J. This was a suit for damages for the killing of live stock. The railway company admitted that the stock was killed by one of its trains, but contended that its engineer had exercised due diligence to prevent the killing. In support of this defense the company relied on his testimony, which was substantially as follows: He was keeping a lookout, as it was his duty to do, but did not see the animal until his engine was within seventy-five or eighty yards of it. "The animal at that time was coming out of a clump of bushes." The reason he could not see the animal sooner "was on account of the distance and trees, bushes, and things of that sort." There was a pine thicket at that point on the edge of the right of way, and the shrubbery and growth cut off his view of the animal until it emerged from the thicket and started across the track. He did everything in his power to prevent striking the animal, but without success. The plaintiff, in order to meet this evidence, testified in his own behalf as follows : There were some pine saplings at the point where the animal was killed, but they were scattering. "There was no underbrush." "Could see a hog or anything out there, a hundred yards out in the woods," from a point seventy-five or eighty yards up the track. Witness went up the track, in the direction from which the train came "about two hundred and ten yards," and from that

point could see a hog fifty yards from the track in the woods. Could see a cow fifty or seventy-five yards out in the woods very easily.     The limbs of the saplings were " all the way from ten to thirty feet high."   At the place where the animal was killed, " the limbs upon the saplings would average from fifteen to twenty feet high," and there was "no underbrush there at all."     There were no bushes at all.    The brush had been burned in the spring, and there was nothing but the scattering saplings to obstruct the view, the nearest of which was twenty-five steps from the track. It was "fifteen feet to the next sapling.   Might have been twenty-five or thirty saplings within fifty yards."   The trial resulted in a verdict for the plaintiff and the railway company made a motion for a new trial, based on the general grounds that the verdict was contrary to law and the evidence.     The motion was subsequently amended by alleging that the court committed error in refusing to direct a verdict in favor of the defendant, and also in declining to give a certain charge requested, which was reduced to writing and timely presented.

It is to be noted that the defendant company sought to show that it had complied with its legal duty as to maintaining a diligent lookout for stock, but that the animal killed could not sooner have been discovered by its engineer, because it was concealed near the track in a thicket so dense as to absolutely obstruct his view. Such was the excuse offered by the engineer.   The plaintiff, on the other hand, testified positively that there was no thicket at the point where the animal was run over, but only a number of scattering pine saplings, with no undergrowth, which did not, in point of fact, obstruct the view of one standing on the track two hundred yards away.   The jury had the right to believe the testimony of the plaintiff in preference to that of the company's engineer as to this matter, and to reach the conclusion that the company's contention that there was a thicket of the kind described by him was a mere pretense.   · The charge requested was in the following language:   " If you believe that the testimony of the plaintiff in this case is consistent both with the theory of diligence and negligence on the part of the defendant railway company, then I charge you that you must adopt the theory of diligence and that the witness for the defendant has sworn truly, and must find for the defendant."    This request was properly refused.    There ·

was a direct conflict as to a question of fact between the testimony of the plaintiff and that of the engineer, and it was for the jury to determine what credit they would give to the plaintiff. His testimony was not consistent with the theory of diligence on the part of the company, and the request was not adjusted to the issue the jury were called on to determine. To have given it in charge would have been to clearly invade their province. On the argument before us, counsel for the railway company insisted that the request should have been given, as it "was framed from the decision of this court in the case of *G. S. & F. Railway Company* v. *Thompson*," 111 *Ga.* 731. There the company introduced testimony which fully overcame the presumption of negligence on which the plaintiff rested his case. He sought by offering circumstantial evidence to discredit the company's witnesses, but this evidence, "while consistent with the theory that they did not swear truly, was also consistent with the theory that they did." Accordingly, this court held that in "such a case, the positive testimony must control." This ruling has no application to the case now before us. *Judgment affirmed. All the Justices concur.*